# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action |
| | : | No. 17-4550 |
| | : | |
| SHAWN OWENS INC. t/a OWEN'S CAFÉ, SHAWN ZRANKOWSKI, and CLARE M. EWING and THOMAS F. EWING as Co-Administrators of the Estate of Thomas C. Ewing, Deceased, | : | |
| Defendants. | : | |

**McHUGH, J.**                                                                 **JULY 17, 2018**

**<u>MEMORANDUM</u>**

This is a declaratory judgment action brought by an insurance company against its insured, a bar, and the plaintiffs in an underlying wrongful death action, arising out of a stabbing incident that occurred near the bar. Nautilus Insurance Company seeks a declaration that it does not have a duty to defend or indemnify Owen's Café because of a policy exclusion for bodily injury that arises from an assault, battery, or physical altercation. Both Owen's Café and plaintiffs in the underlying case seek to characterize the complaint in that action so as to avoid the exclusion, primarily relying on *QBE Insurance Corporation v. M & S Landis Corp.*, 915 A.2d 1222, 1224 (Pa. Super. 2007). But because the policy exclusion here is much broader than the exclusion in *Landis*, I am compelled to grant Judgment on the Pleadings in favor of Nautilus.

1

## I. Relevant Facts

Following the death of Thomas C. Ewing, his parents[1] brought a wrongful death and survival action in the Philadelphia Court of Common Pleas against Defendants Owen's Café and Shawn Szrankowski [hereinafter "Owen's"]. The underlying complaint, pleads that Mr. Ewing was stabbed to death by one Angelo Maldonado on August 7, 2015. (Pl.'s Ex. 3–22, ECF No. 1-2.) The chain of events began when Ewing and other patrons took a bottle from behind the bar, ostensibly without paying for it. In response, Owen's employees directed Maldonado, a regular customer of the bar, to confront the patrons who had taken the bottle. Shortly after leaving the bar, Ewing was confronted by Maldonado, and he stabbed Ewing multiple times. The complaint asserts that the incident "resulted solely from the negligence" of Owen's employees, in that they were aware of Maldonado's violent history and had served him alcohol despite his being both visibly intoxicated and a minor, rendering it entirely foreseeable that he would confront the other patrons in a manner that would result in severe injuries or death. The Ewings' complaint was skillfully crafted to make Owen's negligent conduct in bringing about their son's death the focus of the underlying action.

Owen's presented the claim to Nautilus Insurance Company, which proceeded to defend Owen's against the underlying action under a reservation of rights. Nautilus now moves for Judgment on the Pleadings on the basis of the assault and battery exclusion mentioned above.

---

[1] Mr. Ewing's parents are also named Defendants in this action, alongside Owen's Café and its employee, Shawn Szrankowski.

## II. Controlling Legal Standard

"The proper construction of an insurance policy is resolved as a matter of law in a declaratory judgment action," *QBE Ins. Corp. v. Walters*, 148 A.3d 785, 787 (Pa. Super. 2016), particularly where the existence of coverage is not the subject of dispute in the underlying state court action, *Homesite Ins. Co. v. Neary*, 2017 WL 5172294, at *3 (E.D. Pa. 2017). A motion for judgment on the pleadings is properly granted in a contract case, if the moving party clearly establishes that it is entitled to judgment as a matter of law. *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008). I must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to Defendants, as the non-moving party, and grant the motion only if Defendants would not be entitled to relief under any set of facts that could be proved consistent with the allegations made in the complaint. *Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery Cty.*, 271 F.3d 140, 144 (3d Cir. 2001) (citing *Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 220 (3d Cir. 2001)).

The terms of the insurance policy and the allegations in the underlying third party complaint are determinative. *J.H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 43, 626 A.2d 502, 510 (1993). The insurer is required to accept all of the allegations contained in that complaint as true and provide a defense if the possibility exists that the alleged injury could be covered. *Selective Way Ins. Co. v. Hosp. Grp. Servs., Inc.*, 119 A.3d 1035, 1046 (Pa. Super. 2015) (*en banc*). Where the insurer relies on a policy exclusion as the basis for denying coverage, it has the burden of proving the exclusion applies, with such exclusions being strictly construed against the insurer and in favor of the insured. *See Swarner v. Mutual Ben. Group*, 72 A.3d 641, 645 (Pa. Super. 2013).

### III. Analysis

Although the claim clearly falls with the policy's definition of "bodily injury," Nautilus argues that an exclusion for injuries arising out of an assault, battery, or physical altercation applies. The exclusion states,

> Regardless of culpability or intent of any person, this insurance does not apply to 'bodily injury', 'property damage', 'personal and advertising injury' or medical payments arising out of any (1) actual or alleged assault or battery; (2) physical altercation; or (3) [a]ny act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security.

Assault and Battery Exclusion, Pl.'s Ex. 59, ECF No. 1-2. The exclusion applies regardless of whether such damages are caused by any "insured, employee, patron, or any other person," and so long as the damages occurred at any "premises owned or occupied by any insured." *Id*. It specifically excludes from coverage both the obligation to indemnify and the obligation to defend. *Id.*

Fairly read, the underlying complaint falls within the language of this exclusion. Notwithstanding skillful pleading by Ewing's counsel as to the role played by Owen's in causing this tragedy, by any objective measure the injuries leading to Ewing's death at least in part arose out of an assault, battery, or physical altercation. It strains credulity to assert otherwise, when the complaint expressly states that "Ewing was confronted by a visibly intoxicated Angelo Maldonado who stabbed him multiple times resulting in his death." (Ewing Compl. ¶ 26, Pl.'s Ex. 8, ECF No. 1-2.)

Defendants assert that the policy is ambiguous because of Nautilus's failure to include a definition of 'assault,' 'battery,' 'physical altercation,' or 'arise out of' in the policy. But those terms have both common meaning and legal definition. When challenged at oral argument to identify what further clarification would be necessary for a policyholder to comprehend the

4

scope and applicability of the exclusion, defense counsel could only reply that "assault" and "battery" are legal terms of art. Yet to the extent that they are, such terms are defined by Pennsylvania law. Recently, my colleague Judge Savage applied Pennsylvania definitions of "Trafficking," "Rape," and "Simple Assault" in determining the applicability of this same exclusion to claims that a motel's employee allowed unlawful conduct to take place on its premises. *Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc., d/b/a Neshaminy Inn & E.B.*, 2018 WL 2363594, at *4–6 (E.D. Pa. 2018). *See also Markel Int'l Ins. Co. v. 2421 Salam, Inc.*, 2009 WL 1220557, at *6 (E.D. Pa. 2009) (citing *Essex Ins. Co. v. Starlight Mgmt. Co.*, 198 Fed. Appx. 179, 183 (3d Cir.2006) for the proposition that the terms "assault" and "arising out of," which were not defined in the policy, were unambiguous because Pennsylvania law provides a definition), *report and recommendation adopted*, 2009 WL 1203341 (E.D. Pa. Apr. 30, 2009); *Liberty Surplus Ins. Corp. v. McFaddens at Ballpark LLC*, 116 F.Supp.3d 447, 458 (E.D. Pa. 2015) (same). Moreover, to the extent that assault and battery are legal terms of art, the phrase "physical altercation" incorporates common language, any reasonable interpretation of which would include a stabbing. Indeed, inclusion of the phrase "physical altercation" likely represents a deliberate decision by the carrier to use language that goes beyond terms that also carry a legal definition.

Owen's seeks to avoid the exclusion by arguing that the underlying complaint pleads the negligence of its employees as the moving force in causing Ewing's death, and that the structure of the complaint, combined with the lack of a specific definition of "arising out of" creates sufficient ambiguity to render the exclusion inapplicable. Defendants principally rely on *QBE Ins. Corp. v. M & S Landis Corp.*, 915 A.2d 1222, 1224 (Pa. Super. 2007). There, in an effort by a nightclub's employees to forcibly evict a patron from the premises, its employees restricted the

5

patron's ability to breathe by laying on top of him, ultimately smothering him to death. *Id.* at 1224. The ensuing wrongful death and survival action alleged that the deceased patron's death directly resulted from the negligence of the nightclub and its employees. *Id*. The nightclub sought coverage under a general liability insurance policy it had with QBE Insurance Corporation [hereinafter "QBE"]. *Id.* QBE responded by seeking a declaratory judgment that it had no duty to defend or indemnify, largely relying on policy language that excluded injuries arising from "assault and battery, or any act or omission in connection with the prevention or suppression of such acts." *Id.* at 1228. The provision on which the carrier relied described various types of conduct that might qualify as negligent acts, but did not explicitly exclude actions for negligence from coverage. The Superior Court noted that there was a "litany of allegations" of negligence on the nightclub's part, leading directly to the patron's death. It reasoned that those detailed allegations created an ambiguity as to the existence of coverage given the wording of the exclusion.

Defendants contend that the underlying complaint here is analogous to the complaint in *Landis*. I agree, but that does not end the inquiry because the language in Nautilus' exclusion is materially different from the language of the exclusion in *Landis.* A later case involving the same carrier as in *Landis,* QBE Insurance, is instructive. The case arose several years after *Landis,* and QBE had in the meantime changed the wording of its exclusion, likely because of the deficiencies exposed by the Superior Court's analysis in *Landis.* The underlying dispute was a negligence action brought in part by a patron of a bar who was shot by another patron with whom he had a verbal confrontation earlier that night. *QBE Insurance Corporation v. Walters*, 148 A.3d 785, 786 (Pa. Super. 2016). The complaint alleged that bar security personnel, charged with using hand-held metal detectors, negligently failed to detect that the patron who shot

Walters was armed. *Id.* at 787. It broadly alleged negligence in failing properly to employ, train, and supervise its employees regarding patron safety. *Id.* QBE asserted the newer, expanded version of its exclusion for claims arising out of assault and battery, and the Superior Court found in its favor.

The Court based its decision that decision on the "extensive definition of 'assault and battery'" in QBE's revised policy exclusion, which included:

> "negligent conduct on the part of the insured or its employees that directly harms another person, whether through negligent failure to prevent an assault, negligence *related* to an actual or threatened assault, or negligence *resulting* in battery."

*Id.* at 791 (emphasis added).

Like the exclusion in *Walters,* the exclusion in this case is both broad in its scope and it specifically encompasses negligence claims, stating, "[t]his exclusion applies to [. . .] all causes of action arising out of any assault, battery, or physical altercation, including but not limited to, allegations of *negligent* hiring, placement, training, or supervision, or to *any act*, error, or *omission relating* to such an assault or battery, or physical altercation." Assault and Battery Exclusion, Pl.'s Ex. 59, ECF No. 1-2 (emphasis added). Here, the allegation that Owen's employees were negligent in failing to secure the bottle that started this unfortunate series of events, and in charging Maldonado with the task of retrieving it, can only be read as alleging conduct that is related to an "assault, battery, or physical altercation" that caused Ewing's death.

That conclusion is bolstered by the fact that members of this court and panels of the Pennsylvania Superior Court have consistently limited *Landis* to its facts when considering policy exclusions with more expansive language. *See, e.g*, *Liberty Surplus Ins. Corp. v. McFaddens at Ballpark LLC*, 116 F.Supp.3d 447, 452 (E.D. Pa. 2015) (reasoning that the

7

insurer's "expanded definition of assault and battery to include, *inter alia*, negligent conduct related to the hiring, supervision, and retention of [employees] . . . was broad enough to cover . . . negligence claims connected with [an] assault and battery at the hands of [employees]"); *First Mercury Ins. Co. v. Rossi*, 2011 WL 1235092, at *5 (E.D. Pa. 2011) ("[T]he Policy's exclusion applies to lawsuits seeking to recover for bodily injury '*in any way* connected with assault and/or battery.' This exclusion is broad enough to cover negligence claims that are connected with assault and battery claims. . . . This language is broader than that found in the exclusion in [*Landis*].") (emphasis added); *Regis Ins. Co. v. All Am. Rathskeller, Inc.*, 976 A.2d 1157, 1163 (Pa. Super. Ct. 2009) (explaining that, "in [*Landis*,] the insurance company (QBE) did not assert as a defense the provisions in the assault and battery exclusion disclaiming liability for negligence in 'the hiring, supervision, retention or control' of its employees or other representatives."); *Alea London Ltd. v. Woodlake Mgmt.*, 594 F. Supp. 2d 547, 552 (E.D. Pa. 2009), *aff'd*, 365 Fed.Appx. 427 (3d Cir. 2010) (focusing on the moving defendants' failure to ensure that a security lock functioned properly and stating that, "[t]he complaint alleges that the moving defendants' enabled the shooting to occur and/or failed to prevent it. Both of these scenarios are clearly encompassed by the assault and battery exclusion").

Accordingly, I reject Defendants' argument that the exclusion does not apply.

Defendants' second argument rests on an exception to an entirely separate exclusion in the policy. Specifically, in the second paragraph of the Coverages section, the policy lays out 16 separate exclusions. The first of them is one that excludes coverage for "Expected or Intended Injury," which is defined as bodily injury or property damage expected or intended from the standpoint of the insured. Section I: Coverage A § 2, Pl.'s Ex. 37, ECF No. 1-2. Following that

definition is a limiting exception, which states, "This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." *Id.*

> **2. Exclusions**
> This insurance does not apply to:
> > **a. Expected Or Intended Injury**
> > "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. *This exclusion* does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

*Id.* (emphasis added). Defendants argue that because their employees' actions in instructing Maldonado to retrieve the bottle rendered Maldonado a volunteer employee, effectively deputizing him to carry out Owen's right to use "reasonable force" in retrieving its property, no exclusion applies and Nautilus must defend them accordingly.

I cannot agree. As graphically demonstrated by the policy excerpt above, the phrase "This exclusion," makes clear that the limitation following applies only to that specific exclusion. To hold otherwise would mean construing every exception to a particular exclusion as generally applicable throughout the policy. This would be an unreasonable interpretation of the language itself, and given the sheer volume of exceptions that arise in this section of the policy alone, *see id.* at 38–40 (containing a similarly-worded exception for every exclusion, running alphabetically from "a" through "p"), would render the policy incomprehensible.

In conclusion, when the broad language of the exclusion is applied to allegations in the underlying complaint, it is clear coverage does not exist. Nautilus' Motion for Judgment on the Pleadings must therefore be granted.

/s/ Gerald Austin McHugh<br>United States District Judge